In re Daniel J. JOHNSTON, Debtor.

Daniel J. Johnston, Plaintiff

v.

City of Middletown, et al., Defendants.

Bankruptcy No. 11–34480.
Adversary No. 11–3368.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

Dec. 21, 2012.

Gene E. Schaefer, Middletown, OH, for the Plaintiff.

Leslie S. Landen, Attorney for City of Middletown, Middletown, OH, for Defendant City of Middletown.

Bethany Hamilton, Columbus, OH, for Defendant Department of Treasury.

**Decision Dismissing Counts I & II on the Basis of Lack of Jurisdiction Over the Responsible Person Determination, and in the Alternative, Abstaining from Counts I & II, and Dismissing Count III on the Basis of Standing**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

The issues before the court in this no asset Chapter 7 case are whether the court has the jurisdiction to make determinations as to whether the debtor was the person responsible under applicable tax law for the payment of income taxes withheld from employees' wages to the United States Internal Revenue Service ("IRS") and the City of Middletown ("Middletown") for entities which he solely owned; if the court has the jurisdiction to make those determinations, whether the court should abstain from making those determinations; and whether the debtor has standing to assert a preference claim under 11 U.S.C. § 547[1] arising from the IRS's post-petition setoff of the debtor's tax refund for asserted prepetition taxes or penalties owed.[2] Following a pretrial conference, the court *sua sponte* ordered

---

1. Unless otherwise noted, any reference to a statute will be to the Bankruptcy Code of 1978, as amended, codified at 11 U.S.C. § 101–1532.

2. The court's determinations in this adversary proceeding are premised upon the underlying bankruptcy case being a no-asset Chapter 7 bankruptcy case and have no applicability to other chapters of the Bankruptcy Code, such as Chapter 11 or Chapter 13.

the parties to brief those issues. The briefing of those issues is now concluded and the court is prepared to render its decision.

## II. Statement of Facts, Procedural Background, and Positions of the Parties

Daniel J. Johnston ("Johnston"), the debtor in the underlying Chapter 7 case, commenced this adversary proceeding by filing a complaint (the "Complaint") against defendants Department of the Treasury Internal Revenue Service ("United States") and Middletown. Both the United States and Middletown have assessed trust fund taxes and civil penalties against Johnston as the "responsible person" for payment of the trust fund taxes incurred by three corporate entities—JMI, Inc., IMJ, Inc., and Spectrum Site Services (the "Companies"). Johnston is the sole owner of the Companies.[3]

Johnston filed his petition initiating this case under Chapter 7 of the Bankruptcy Code on August 16, 2011 (the "Estate Case"). He scheduled priority tax debts owed to the IRS and Middletown, in addition to various other unsecured debts including further amounts owed to taxing authorities and state agencies. Much of this debt appears to be related to the Companies. See est. doc. 1 (Schedule E—Creditors Holding Unsecured Priority Claims and Schedule F—Creditors Holding Unsecured Nonpriority Claims). The meeting of creditors was held on October 13, 2011 and on that same date the Chapter 7 trustee entered his *Report of No Distribution* on the docket in which he concluded that this was a no asset case and that creditors would not receive a distribution from the bankruptcy estate. This adversary proceeding was filed on October 27, 2011. On January 19, 2012 Johnston received his discharge. This adversary proceeding and the separate adversary filed against the State of Ohio are the only items pending in Johnston's bankruptcy case.

Count I of the Complaint seeks a declaratory judgment that Johnston is not responsible under applicable state law for the employment taxes owed to Middletown for the tax years 2007, 2008, 2009 and 2010. Count II seeks a declaratory judgment that the employment taxes owing to the United States for those same tax years are likewise not the debt of Johnston under applicable federal law. Count III avers that the United States violated the automatic stay, § 362, by seizing post-petition Johnston's individual 2010 tax refund and that such seizure constitutes a preference to the United States pursuant to § 547.

The court asked the parties to brief the issues of whether this court has subject matter jurisdiction over Counts I and II of the Complaint and if subject matter jurisdiction exists as to Counts I and II, whether this court should abstain from determining those claims pursuant to 28 U.S.C. § 1334(c).[4] The court also asked Johnston

---

3. Johnston also filed a separate adversary proceeding against the State of Ohio regarding trust fund liability scheduled although not yet assessed. *See* Adversary Proceeding 11–3405—filed on November 30, 2011. In that adversary Johnston raises the same arguments as here while the State of Ohio makes arguments similar to those made by the IRS and Middletown in this adversary proceeding. The issues have been briefed in both adversary proceedings. Unless otherwise noted, however, any references in this decision will be to the filings in this adversary proceeding. The court will issue a separate order to address the State of Ohio adversary proceeding.

4. Any other references to 28 U.S.C. §§ 157 and 1334 in the text of the decision will refer to the section only.

and the United States to address Johnston's standing as a Chapter 7 debtor to assert the preference claim included in Count III. However, having reviewed the briefs submitted by Johnston and the United States, the court notes that neither addressed that question. Nevertheless, the court will address all of the issues which the court requested the parties to brief.

Johnston maintains that § 1334(c)(1), § 157(b) and § 505(a)(1) all grant subject matter jurisdiction to decide the question of whether he is a person responsible for payment of the trust fund taxes owed to the United States and Middletown. Johnston argues this matter is a core proceeding under § 157(b)(2)(A) because his potential liability for payment of the trust fund taxes directly impacts the administration of his Chapter 7 case. Alternatively, he contends that the matter is core under § 157(b)(2)(I) because it involves the dischargeability of trust fund taxes owed to the United States and Middletown. Johnston also reasons that should the court determine this is not a core proceeding under either of those bases, § 1334(c)(1) nevertheless confers jurisdiction because this matter is related to his Chapter 7 case.[5] Johnston further contends that § 505(a)(1) allows this court to determine his liability for the taxes in question. Lastly, Johnston urges this court not to abstain from hearing this proceeding because the relevant factors which must be considered do not favor abstention under § 1334(c).

The United States denies that this matter is a core proceeding since it does not invoke a substantial right created by federal bankruptcy law and can exist outside of bankruptcy. The United States likewise disputes that this adversary is related to the Estate Case because the outcome of this proceeding can have no conceivable impact on this estate in light of the fact that the Chapter 7 trustee has filed a no-asset report. The United States also points out that even if § 505 is an independent source of jurisdiction (which it disputes), the statutory language purports only to permit a court to render a determination of tax liability. The United States argues that the purpose of § 505 would not be served by this court's determination of whether Johnston is responsible for payment of the trust fund taxes. The United States further contends that, assuming subject matter jurisdiction exists to make this determination, the court should nevertheless abstain from doing so.

Middletown maintains that jurisdiction does not exist given that the real issue in this case is not the dischargeability of the taxes (which the parties agree are not dischargeable), but rather Johnston's claim that he is not the responsible party. Middletown also takes issue with Johnston's assertion that there are no questions of state law. Middletown argues that the determination of responsibility for municipal taxes is a matter of state law, rather than federal law. Consequently, Middletown asserts that this court should abstain even if jurisdiction exists.

In addressing this matter, it is important to remember that while the responsible person determination would be based

**5.** While Johnston refers to § 1334(c)(1) as supporting this court's jurisdiction over the responsible person determination, that subparagraph of § 1334 is an abstention provision providing a basis for bankruptcy courts to abstain from certain proceedings over which they have jurisdiction, it is not a jurisdictional provision. The court assumes that Johnston's intended reference is to § 1334(b) which provides in pertinent part that: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

upon similar considerations for each taxing authority, three separate determinations are involved: one for federal income tax purposes; one for Ohio income tax purposes; and one for Middletown income tax purposes.[6] Thus, while this decision may refer to the "making of the responsible person determination," three separate determinations will need to be made using the same or substantially the same facts.

## III. Legal Standard and Analysis

### A. Subject Matter Jurisdiction

#### 1. *General Jurisdictional Framework*

 The first and fundamental question presented by every case brought to the federal courts is whether the court has subject matter jurisdiction to hear the case before it, even when the parties concede or do not raise the issue. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *Harker v. Wells Fargo (In re Krause)*, 414 B.R. 243, 252 (Bankr. S.D.Ohio 2009). Regardless of whether the parties raise jurisdictional issues themselves—or even attempt to consent to federal jurisdiction—federal courts have an independent obligation to investigate and police the constitutional and statutory limits of their own jurisdiction and counsel, as officers of the court, have an obligation to

aid the courts with that duty. *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir.1998) (overruled in part on other grounds); *Minority Police Officers Assoc. v. City Of South Bend*, 721 F.2d 197, 199 (7th Cir.1983). The party alleging federal court jurisdiction bears the burden of proof. *Nuveen Mun. Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3rd Cir.2012); *Perry v. EMC Mortg. Corp. (In re Perry)*, 388 B.R. 330, 337 (Bankr. E.D.Tenn.2008); *Kmart Creditor Trust v. Conaway (In re Kmart Corp.)*, 307 B.R. 586, 590 (Bankr.E.D.Mich.2004).

 Federal courts are courts of limited jurisdiction. *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1137 (6th Cir.1991); *Robinson v. Michigan Consolidated Gas Co. Inc.*, 918 F.2d 579, 582 (6th Cir.1990); *Uber v. Nelnet, Inc. (In re Uber)*, 443 B.R. 500, 504 (Bankr. S.D.Ohio 2011). Bankruptcy courts have specific statutory limits on the cases, proceedings and matters which they may hear. Bankruptcy courts do not have broad general jurisdiction over cases or controversies, but only jurisdiction over a particular matter if Congress has provided such jurisdiction. As stated by the Supreme Court in *Celotex Corp. v. Edwards*, 514 U.S. 300, 307, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995): "The jurisdiction of

---

**6.** At the federal level, the responsible person determination is "essentially a functional one," considering such factors as: 1) the duties of officer as outlined by the corporate by-laws; 2) the ability of the individual to sign checks of the corporation; 3) the identity of the officers, directors, and shareholders of the corporation; and 4) the identity of the individuals who were in control of the financial affairs of the corporation. *Clouse v. United States*, 865 F.2d 1267, 1989 WL 2205, at *4 (6th Cir. Jan. 17, 1989); *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D.Ohio 1970). At the state level, Ohio Administrative Code § 5703–7–15(C) provides that an officer or trustee is personally liable for the with-

holding taxes if the officer is "responsible for the execution of the corporation's fiscal responsibilities," and then lists 12 different functions which render the officer personally liable as a responsible officer. Subsection (D) of that same Administrative Code provision also provides personal liability for employees (as opposed to officers) under three circumstances. Middletown Code of Ordinances, § 890.06(g), in pertinent part, provides that "all officers, members, managers, employees and trustees having control or supervision of or charged with the responsibility of filing the return and making payment are jointly and severally personally liable for the tax not returned or paid to the City...."

the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."

In order to determine whether this court has jurisdiction over Count I and Count II of the Complaint, an analysis of three statutes is appropriate— § 1334, § 157 and § 505. The court will discuss the general framework of those statutes and then analyze the jurisdictional issue presented in this adversary proceeding.

*28 U.S.C. § 1334—Congress' Grant of Bankruptcy Jurisdiction to the District Courts and Referral of Bankruptcy Cases and Proceedings by the District Courts to the Bankruptcy Courts.* Congress' general grant of bankruptcy jurisdiction is provided by § 1334. Congress vested the district courts with jurisdiction over "all cases under title 11." 28 U.S.C. § 1334(a). Of course "title 11" refers to Title 11 of the United States Code, which is more commonly known as the "Bankruptcy Code." Thus the term "all cases under title 11" pertains to cases initiated by the filing of a bankruptcy petition under §§ 301, 302 and 303, sometimes referred to as the "estate case" or "main case." *Wolverine Radio,* 930 F.2d at 1141

Through the same grant of authority, district courts also have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). There are two types of contested "proceedings" that may arise under, in, or related to a Title 11 bankruptcy case—adversary proceedings and contested matters. *See* Alan N. Resnick & Henry J. Sommer, 10 Collier on Bankruptcy, ¶¶ 7000 & 9014 (16th ed. 2012) and Norton Bankruptcy Law and Practice 3d, Dictionary of Bankruptcy Terms, Vol. 13, pp. 200–01 (January 2012) (definition of "proceeding"). The Sixth Circuit has defined "proceeding" as "the steps within the 'case' and to any subaction

within the case that may raise a disputed or litigated matter." *Wolverine Radio,* 930 F.2d at 1141. Adversary proceedings are lawsuits commenced through the filing of a complaint within a debtor's bankruptcy case. While the complaint is initially filed in the estate case, the adversary proceeding commenced by the filing of that complaint is given a separate adversary proceeding number and docket. Contested matters are initiated within a bankruptcy case through the filing of a motion, application or objection. All filings related to that contested matter are docketed within the estate case. *See 10 Collier, supra,* ¶ 9014.01.

The district courts routinely refer all bankruptcy cases and all civil proceedings arising under, in, or related to cases under title 11 to the bankruptcy courts pursuant to § 157(a). *Thickstun Brothers Equip. Co., Inc. v. Encompass Services Corp. (In re Thickstun Bros. Equip. Co., Inc.),* 344 B.R. 515, 520 (6th Cir. BAP 2006). The order of reference for the United States District Court for the Southern District of Ohio referring all bankruptcy cases and proceedings to this court is General Order No. 05–02 (the "General Order of Reference").

This adversary proceeding arose not from the filing of a bankruptcy petition, but rather from the filing of an adversary complaint within a bankruptcy case. While the court undoubtedly has jurisdiction over the Estate Case by virtue of § 1334(a) and the General Order of Reference, the first issue for determination is whether this adversary proceeding is a proceeding "under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). If this adversary proceeding meets those criteria, then this court has jurisdiction over the adversary proceeding pursuant to § 1334(b) and the General Order of Reference.

In *Wolverine Radio*, the Sixth Circuit held that because the categories in § 1334(b) are disjunctive, "it is only necessary to determine whether [the] matter is at least 'related to' the bankruptcy." 918 F.2d at 1141. A matter is "related to" an underlying case if *"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins (In re Pacor),* 743 F.2d 984, 994 (3rd Cir.1984) (italics in original). In *Celotex*, the Supreme Court sanctioned the use of the *Pacor* standard. 514 U.S. at 308, 115 S.Ct. 1493. The Sixth Circuit has adopted the *Pacor* test "with the caveat that situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement." *Wolverine Radio,* 930 F.2d at 1142.

*28 U.S.C. § 157—Designation of Core Proceedings.* Proceedings in the bankruptcy courts may be either "core" proceedings or "noncore" proceedings. *See* 28 U.S.C. § 157 and *Waldman v. Stone,* 698 F.3d 910, 916–17 (6th Cir.2012). Johnston asserts that this proceeding is core because his potential liability for payment of the trust fund taxes directly impacts the administration of his Chapter 7 case and, therefore, is a core proceeding under § 157(b)(2)(A) and, alternatively, because determinations as to the dischargeability of particular debts are "core proceedings" under § 157(b)(2)(I).

Analysis of whether a proceeding is core must be made on a claim-by-claim basis. *Waldman,* 698 F.3d at 921. A core proceeding invokes either a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy. *Id.* at 921–22.

The distinction between "core" and "noncore" proceedings is made because bankruptcy judges have the authority to render final orders and judgments only as to core proceedings. With respect to "noncore" proceedings, however, bankruptcy judges may only render proposed findings of fact and conclusion of law for the district court's review and final determination. *Id.* at 917. Thus, § 157 and Congress' designation of "core proceedings" made in § 157(b) do not confer jurisdiction on district courts or the bankruptcy courts, but rather assist only in delineating those proceedings in which the bankruptcy court may enter final orders or judgments. As stated by the Sixth Circuit Bankruptcy Appellate Panel

[I]t is important to note the distinction between the determination of whether a court has jurisdiction over a proceeding and the determination of whether the proceeding is "core" or "non-core." "These aspects of bankruptcy law are not interchangeable. The status of a proceeding as core or non-core does not affect the issue of jurisdiction." *Bank United v. Manley,* 273 B.R. 229, 238 (N.D.Ala.2001). "Subject matter jurisdiction is the court's authority to entertain an action between the parties before it." *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.),* 885 F.2d 621, 624 (9th Cir.1989). Jurisdiction over bankruptcy cases and proceedings is vested in the district courts by 28 U.S.C. § 1334. The district courts may then refer those matters to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Whether a matter is "core" or "non-core" under 28 U.S.C. § 157(b) then controls the extent to which the bankruptcy judge may exercise the district court's bankruptcy jurisdiction. *Id.* § 157(c). "The core/non-core determination under 28 U.S.C. § 157(b) and (c) implicates the bankruptcy court's power to render final orders or judgments; it is not a determination that the bankruptcy court either

possesses or lacks subject matter jurisdiction over a particular proceeding." *Holly's, Inc. v. City of Kentwood (Matter of Holly's, Inc.),* 172 B.R. 545, 556 (Bankr.W.D.Mich.1994), aff'd, 178 B.R. 711 (W.D.Mich.1995); accord, e.g., *Gen. Am. Communications Corp. v. Landsell (In re Gen. Am. Communications Corp.),* 130 B.R. 136, 154 (S.D.N.Y.1991). *Hart v. Logan (In re Hart),* 326 B.R. 901, 2005 WL 1529581, at *3 (6th Cir. June 24, 2005). *See also Perry,* 388 B.R. at 337–38.

*11 U.S.C. § 505(a)—Bankruptcy Courts' Authority to Determine Tax Liability.* The third statute relevant to determining the court's jurisdiction over making the "responsible person" determination is § 505. Section 505(a)(1) provides in relevant part that:

> [T]he court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). Subsection (a)(2) limits that authority by providing that:

> The court may not so determine—(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction *before* the commencement of the case under this title.

11 U.S.C. § 505(a)(2)(A) (italics added).

Johnston argues that § 505(a) provides an independent jurisdictional basis for making this determination. The United States disagrees and submits that § 1334 is the only possible grant of jurisdiction. Courts are divided on this question of whether § 505 is an independent grant of jurisdiction to bankruptcy judges to deter-

mine the legality and amounts of tax claims. Thus, in *Swain v. United States (In re Swain),* the court specifically held that § 505(a) is not an independent grant of jurisdiction to bankruptcy courts. 437 B.R. 549, 562 (Bankr.E.D.Mich.2010). *See also United States v. Zellers (In re CNS, Inc.),* 255 B.R. 198, 201 (N.D.Ohio 2000) ("The subject matter jurisdiction of bankruptcy courts over tax proceedings is derived from the jurisdiction of the federal district courts under 28 U.S.C. § 1334...."). However, in *Kohl v. IRS (In re Kohl),* 397 B.R. 840, 845 (Bankr. N.D.Ohio 2008), the court found that § 505(a)(1) "vests bankruptcy courts with broad jurisdiction to determine tax liabilities arising either before or after the filing of a case under title 11," but nevertheless abstained from making a responsible person determination because it would have had no impact on the creditors or bankruptcy estate. *See also Fyfe v. U.S. (In re Fyfe),* 186 B.R. 290 (Bankr.N.D.Ga.1995) (court has general jurisdiction and power to determine tax liabilities and such matters are core proceedings, with the only limitations on that power being not able to make such determinations if they have already been made by a court of competent jurisdiction and the court's ability to exercise its discretion in determining whether to make such a determination); and *Anderson v. United States Dep't of the Treasury/IRS (In re Anderson),* 171 B.R. 549, 551 (Bankr.W.D.Va.1994) ("Among the provisions of broadened jurisdiction of this Court was § 505....").

■ Regardless of whether § 505 is jurisdictional, it is undisputed that the court's power under § 505 to determine tax liability is discretionary. *See In re Beisel,* 195 B.R. 378, 379 (Bankr.S.D.Ohio 1996) ("Section 505(a)(1) allows but does not require the Bankruptcy Court to determine a debtor's tax liabilities.") and *In*

*re Galvano,* 116 B.R. 367 (Bankr.E.D.N.Y. 1990) (authority under § 505 to determine tax liability is discretionary). It is also important to note the purposes of § 505: providing a forum for the speedy determination of the legality or amount of tax claims, which if left to other proceedings, would delay the administration of the bankruptcy estate; and providing an opportunity for the trustee, on behalf of creditors, to contest the legality and amount of a tax claim when the debtor is unable or unwilling to do so and a dissipation of estate assets might otherwise occur. *See City Vending of Muskogee, Inc. v. Oklahoma Tax Comm.,* 898 F.2d 122, 124–25 (10th Cir.1990); *Beisel,* 195 B.R. at 379–80; *Kohl,* 397 B.R. at 845.

### 2. *Review of Case Law on Bankruptcy Court Jurisdiction to Make Responsible Person Determination*

This is not the first bankruptcy court to address its jurisdiction to determine whether the debtor is a responsible person for employment tax withholding and payment purposes in a no-asset Chapter 7 bankruptcy case. The courts have directly and indirectly reached different conclusions.

The majority of bankruptcy courts have found jurisdiction for making the responsible person determination for the debtor in a no asset Chapter 7 case and have either made the determination or abstained from making the determination. Thus, Johnston relies on *Kohl,* to support this position. In *Donoff v. United States (In re Donoff),* 1999 Bankr.LEXIS 144 (Bankr. S.D.Ohio Feb. 5, 1999), the court held that it had jurisdiction over the responsible person determination, but abstained under § 1334(c) and § 505(a). *See also Beisel; Shapiro v. United States (In re Shapiro),* 188 B.R. 140 (Bankr.E.D.Pa.1995); *Starnes v. United States (In re Starnes),* 159 B.R. 748 (Bankr.W.D.N.C.1993); *Fyfe. But see In re Anderson,* 171 B.R. 549 (Bankr.W.D.Va.1994)(bankruptcy court declined to abstain from hearing responsible person determination); *In re D'Alessio,* 181 B.R. 756 (Bankr.S.D.N.Y.1995) (same); and *In re Wheeler,* 183 B.R. 265 (Bankr. W.D.Okla.1995) (same).

In *Kohl,* the debtors in a joint Chapter 7 case filed a complaint seeking a determination that the penalty assessed against the debtor-wife was a dischargeable debt on the basis that she was not the person legally responsible for payment of the trust fund taxes. The United States moved for judgment on the pleadings on the grounds that the penalty sought to be discharged is nondischargeable as a matter of law pursuant to §§ 523(a)(1)(A) and 507(a)(8)(C) and, because a determination of the debtor-wife's tax liability would serve no purpose in a no asset Chapter 7 case, that the court lacked jurisdiction over the claim. The debtors, although acknowledging in their response that a penalty arising from non-payment of trust fund taxes is nondischargeable, asserted that the penalty against the debtor-wife should nevertheless be discharged because the assessment here was made in the mistaken belief that she was a responsible party.

Judge Speer examined the jurisdictional framework of §§ 1334 and 157(b) and found that, although the dischargeability action brought by the debtors did not directly impact their bankruptcy estate, it clearly invoked a substantive right created by federal bankruptcy law which could exist only within the confines of a case under title 11. *Kohl,* 397 B.R. at 843–44. In finding that it had jurisdiction to determine whether the debtor-wife owed a debt to the IRS, he focused on § 157(b)(2)(I), unlike the court in *Swain,* 437 B.R. at 556, which had concluded the debtor in that case was not seeking a determination as to

the dischargeability of a particular debt, but rather a determination that she owed no debt. Judge Speer noted that the existence of a debt is a key component in any dischargeability action and that the United States, having assessed the tax penalties against Mrs. Kohl, had acknowledged this key component. *Kohl,* 397 B.R. at 844.

In *Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.),* Judge Gregg viewed the issue from a different perspective. 172 B.R. 545 (Bankr.W.D.Mich.1994). He observed that such an action does not fit neatly into the judicially created definition that a "related to" proceeding must have some conceivable impact on the administration of the bankruptcy estate, but that neither the Bankruptcy Code nor title 28 defines the term "related to." *Id.* at 558–59. He further noted that the legislative history provides no guidance as to "related to" jurisdiction. *Id.* at 559. Nevertheless, he concluded that a proceeding to determine the debtor's tax liability under § 505(a) is at least related to the debtor's bankruptcy case "because it invokes a right created by the Bankruptcy Code and enforceable only within the confines of a bankruptcy case." *Id.* at 560.

Several courts have expressly held that bankruptcy courts do not have jurisdiction to determine whether the debtor is a responsible person in a no-asset Chapter 7 case. First, in *United States v. Miller (In re Miller),* the district court reversed the bankruptcy court and dismissed the adversary proceeding for lack of subject matter jurisdiction when the "Bankruptcy Court ... determined that there is no bankrupt-

cy purpose for such a determination and yet refused to abstain." 2004 U.S. Dist. LEXIS 3547 (N.D.Ohio Feb. 4, 2004).

In *Swain,* Judge Tucker thoroughly examined the jurisdiction issue.[7] The debtor, who had received a discharge under § 727(a), sought a declaratory judgment that she did not owe the Internal Revenue Service any debt for approximately $18,000 in unpaid withholding taxes arising from the operation of a restaurant by the debtor and her husband. The debtor feared that the IRS would assess her taxes under the 100% penalty provisions of 26 U.S.C. § 6672[8] although no such assessment had yet been made. Like Johnston in this case, the debtor argued that she was not a responsible person liable for the § 6672 tax penalty. To the extent she were liable, the debt would be nondischargeable under § 523(a)(1)(A). The debtor thus couched her claim as one to determine the dischargeability of a debt and asserted that it was a "core proceeding" under § 157(b)(2)(I). The IRS moved to dismiss the declaratory action for lack of subject matter jurisdiction.

In granting the motion to dismiss, the bankruptcy court concluded that the debtor was not seeking a determination as to the dischargeability of a particular debt, but rather a determination that she owed no debt. *Swain,* 437 B.R. at 556. The court therefore concluded that § 157(b)(2)(I) did not apply and that the action was not a proceeding "arising under title 11" because it did not "involve a cause of action created or determined by a statutory provision of title 11." *Id.* at 560

---

**7.** This court referred to the *Swain* decision in the *Order Setting Briefing Dates and Ordering Other Matters* (doc. 25), but explained its citation of that decision, as well as others, was for illustrative purposes only and that the court would independently determine the existence of subject matter jurisdiction after the parties had the opportunity to brief that issue.

**8.** That statute provides that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by [the Internal Revenue Code] who willfully fails [to do so] ... shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."

(*quoting Wolverine Radio*, 930 F.2d at 1144). The court also found that the adversary proceeding could not "conceivably have any effect on the estate being administered" in the pending Chapter 7 case. *Id.* at 562. The debtor had received her discharge, and because the trustee had filed a "no asset" report, the unsecured creditors would receive no distribution no matter how the tax dispute was resolved. Accordingly, the court determined that it did not have "related to" jurisdiction. *Id.*

The court further held that § 505(a)(1) was not an independent grant of subject matter jurisdiction and that a bankruptcy court would need to have jurisdiction under §§ 1334(b) or 157(a) in order to determine a tax or tax penalty under this provision. *Id.* First, the court concluded § 505(a)(1) did not make the proceeding one "arising under title 11" because it did not "involve a cause of action created or determined by a statutory provision of title 11." The relevant statutory provision was 26 U.S.C. § 6672(a), not § 505(a). *Id.* Second, § 505(a)(1) did not make the proceeding one "arising in a case under title 11" because this type of tax dispute can and does arise outside of bankruptcy. *Id.* at 563. Third, § 505(a)(1) did not make the proceeding one "related to" a case under title 11 because it does not change the fact that the outcome of the tax dispute could not conceivably have any effect on Mrs. Swain's estate. *Id.* Lastly, the court could not consider the debtor's argument that her "fresh start" would be frustrated if she were required to litigate her tax dispute in another forum given the fact that the court lacked subject matter jurisdiction over the dispute. *Id.*

### 3. The Court's Conclusions Regarding Its Jurisdiction to Make Responsible Person Determinations in No Asset Chapter 7 Cases

The issue of whether bankruptcy courts have the jurisdiction to make the responsible person determination as to debtors in no-asset Chapter 7 cases is particularly thorny given the statutory scheme imposed by §§ 1334 and 157 and § 505. In declining to address this jurisdictional issue despite the urging of the IRS, the First Circuit Court of Appeals stated: "The section 505 issue is of some difficulty, and we decline to pursue it where as here nothing turns on it." *United States v. Paolo (In re Paolo)*, 619 F.3d 100, 104 (1st Cir.2010). The Court dismissed the appeal finding that pursuant to § 1334(d) it could not review the lower court's determination to abstain. *Id.* It concluded, however, that review of a court's failure to address its jurisdiction over a case is appropriate when the case is dismissed "on other non-merits grounds, like abstention." *Id.*

*Swain,*, *Kohl* and *Holly's* are all decisions from respected jurists in this circuit and highlight the difficulties in determining the parameters of bankruptcy court jurisdiction. *Swain* and *Kohl* reached opposite conclusions on this issue, while *Holly's* reached the same conclusion as *Kohl*, only on a different basis.

■ Application of the Pacor test to this proceeding leads to the conclusion that this court does not have "related to" jurisdiction because, while the outcome could most definitely alter the debtor's liabilities, rendering of the responsible person determination does not have any conceivable effect on the estate being administered—it does not affect property of the estate and does not affect distributions to creditors or otherwise affect the administration of this bankruptcy estate except for delaying the closing of the case until the two related adversary proceedings are concluded. Thus, application of § 505, which authorizes bankruptcy courts to determine debtors' tax liabilities, to no asset cases such as

this one runs afoul of the *Pacor* test for "related to" jurisdiction under § 1334.

▮▮▮▮▮ Having concluded that the responsible person determination does not fall under the "related to" jurisdiction as espoused in *Pacor* and *Wolverine,* then this court must determine whether this proceeding is one "arising under title 11" or "arising in" a case under title 11. 28 U.S.C. § 1334(b). Proceedings "arising in" a title 11 case are those that "by their very nature, could arise only in bankruptcy cases." *Wolverine Radio,* 930 F.2d at 1144. This proceeding is clearly not one "arising in" a bankruptcy case under this standard because the responsible person determination arises outside of bankruptcy cases and is not confined to bankruptcy cases. Thus, the jurisdictional issue rests on whether this proceeding is one "arising under title 11." *Id.*

▮▮▮▮▮ Proceedings "arising under title 11" are those proceedings "that involve a cause of action created or determined by a statutory provision of title 11...." *Id.* Johnston, like other debtors in no-asset Chapter 7 cases, argues that this proceeding rests on a cause of action created by § 523, and specifically § 523(a)(1). However, while his complaint is couched as a complaint to determine the dischargeability of the responsible person assessments, the substance of the complaint is one seeking a declaratory judgment that he does not owe the debt because he is not a responsible person. As noted, there is no dispute that if he owes the trust fund penalties, they are nondischargeable. Thus, this court's determination made through the adversary would not be as to the dischargeable nature of the debt, but rather, would be as to whether the debt is owed at all. In an asset case, this determination would be made through the claims process—the taxing authority would file its claim and the trustee or debtor (assuming the debtor had standing) would object to the proof of claim and the court would determine whether the debt is owed by the debtor. In a no asset case, no such procedure is available because claims are not filed since there is no need to determine claims if there will be no assets to distribute to creditors. As is often said, substance must prevail over form. In this case, there is neither a cause of action created by title 11 nor a title 11 statutory provision which serves as the basis for this proceeding because it is not a dischargeability proceeding under § 523 and there is no claims determination process in no asset cases. The *Kohl* court was correct in noting that frequently a claim must be determined or liquidated as part of a dischargeability proceeding, but the essence of the dischargeability proceeding—and what gives the bankruptcy court jurisdiction over such proceedings—is the determination of whether the debt fits within one of the exceptions to discharge provided by § 523. If the court need not determine that the debt fits within one of the exceptions to discharge included in § 523(a), then there is no bankruptcy reason or purpose for liquidating the debt or presiding over the adversary proceeding. In this case the court would not be making any determination as to whether the debt fits within one of the 523 exceptions—the parties have already acknowledged that if there is a debt, it fits within the § 523(a)(1) exception to discharge.

▮▮▮▮ This court agrees with *Swain* that § 505 does not serve as an additional grant of jurisdiction to the bankruptcy courts. Rather, the court construes that statute as allowing the court to determine tax liability, assuming that liability has not already been determined by a competent tribunal, if the court otherwise has jurisdiction over that proceeding under the confines of the jurisdiction granted to it by § 1334(a) or

(b). In *Wolverine Radio,* the Sixth Circuit rejected the proposition that a Bankruptcy Code provision could serve as an additional grant of jurisdiction, stating that "even were we to view this case solely as a proceeding to obtain an order pursuant to section 105(a), the power of the bankruptcy and district courts to hear this case is limited to the grant of jurisdiction in 28 U.S.C. § 1334." 918 F.2d at 1140. *See also Zellers,* 255 B.R. at 201 ("The subject matter jurisdiction of bankruptcy courts over tax proceedings is derived from the jurisdiction of the federal district courts under 28 U.S.C. § 1334...."). Section 1334 is the Congressional grant of jurisdiction to the district courts, through which the bankruptcy courts obtain their authority, with the Bankruptcy Code providing the framework for district courts' and bankruptcy courts' administration of bankruptcy cases and proceedings over which they have jurisdiction under § 1334. Section 505 is one of those provisions—it is not an expansion of the jurisdiction granted to district and bankruptcy courts under § 1334.

■ The court also rejects the argument that this proceeding is a core proceeding because it either concerns the administration of the estate [§ 157(b)(2)(A) ]; is a determination as to the dischargeability of a debt [§ 157(b)(2)(I) ]; or is an "other proceeding" affecting the adjustment of the debtor-creditor relationship [§ 157(b)(2)(O) ]. First, as noted, the core and non-core distinction provided by § 157 only comes into play if the court first determines it has jurisdiction under § 1334. Section 157 does not create jurisdiction when it does not exist under § 1334. This conclusion is supported by the fact that § 157(b)(1) repeats the language of § 1334(a) and (b) in delineating what cases and proceedings a bankruptcy judge may hear. Thus, the descriptions of "core" proceedings under § 157(b)(2), like § 505, do not expand the jurisdiction granted to the district courts and bankruptcy courts through § 1334.

■ Second, this adversary proceeding does not fall within any of the subsections of § 157(b)(2). The responsible person determination does not impact administration of Johnston's bankruptcy estate as it does not affect property of the estate, allowance of claims, or distributions to creditors. The only way it affects administration of the estate is that it delays the closing of the Estate Case until this adversary is closed—which is not a basis for finding the matter is a core proceeding. As noted, while the proceeding is couched as a proceeding to determine the dischargeability of the trust fund assessments, it is not a dischargeability proceeding because the parties all agree that if Johnston owes the debts (i.e. is a responsible person), the debts are nondischargeable under § 523(a)(1). Finally, the proceeding does not fit within subsection (O)—"other proceedings affecting ... the adjustment of the debtor-creditor ... relationship ... [.]" For this argument to apply, one must assume that determining Johnston's liability as a responsible person—or determination of these debts—is appropriate in a *no asset* Chapter 7 case. However, subsection (B) specifically provides that only "allowance or disallowance of claims against the estate" are core proceedings. The court need not allow or disallow claims against Johnston individually—which is what he is asking the court to do. The failure of this subsection to include determination of claims against debtors—as opposed to the estate—necessarily excludes and precludes determination of claims against debtors individually. Accordingly, the court finds that there is no basis upon which to conclude that this proceeding is a "core" proceeding.

For these reasons, the court joins the *Swain* court in concluding that it does not have jurisdiction to make a responsible person determination as to debtors in no-asset Chapter 7 cases. Nevertheless, in the event the court is later determined to have erred in its jurisdictional conclusion, the court will also address the abstention issue so complete relief can be granted to the parties.

## B. Abstention

 If one were to assume that the court has jurisdiction, this court nevertheless chooses to abstain from making the responsible person determinations pursuant to § 1334(c)(1) and § 505(a). Courts have viewed the issue of whether to abstain from making the responsible person determination from the framework of two different statutes—§ 1334(c)(1) and § 505(a). *See Cody, Inc. v. County of Orange (In re Cody, Inc.),* 338 F.3d 89, 97 n. 8 (2nd Cir.2003) and *Donoff,* 1999 Bankr.LEXIS 144. Assuming this court has jurisdiction over making the responsible person determination, the court abstains from doing so under both § 1334(c)(1) and § 505(a).

### 1. *Abstention Under 28 U.S.C. § 1334(c)(1)*

 Even when subject matter jurisdiction exists, a bankruptcy court may abstain from hearing a proceeding arising under title 11 or arising in or related to a case under title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law ... [.]" 28 U.S.C. § 1334(c)(1). "Abstention from the exercise of federal jurisdiction [however] is the exception, not the rule." *In re Nationwide Roofing and Sheet Metal,* 130 B.R. 768, 778 (Bankr.S.D.Ohio 1991). The doctrine of abstention is an "extraordinary and narrow" exception to the duty of a district court, and thus a bankruptcy court, to adjudicate a controversy that is properly before it. *Id.* Abdication of the obligation to decide cases can be justified under the permissive abstention doctrine only in the "exceptional circumstances where the order to the parties to repair to the State Court would clearly serve an important countervailing interest." *McDaniel v. ABN Amro Mortg. Group,* 364 B.R. 644, 649 (S.D.Ohio 2007), *quoting In the Matter of Tremaine,* 188 B.R. 380, 384 (Bankr.S.D.Ohio 1995).

 Bankruptcy courts consider a non-exclusive list of factors when determining whether to abstain. Those factors include:(1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law;(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of this court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; and (13) any unusual or other significant factors. *Nationwide,* 130 B.R. at 770–80; *see also Tremaine,* 188 B.R. at 385; and *Antioch Co. Litigation Trust v. Hardman,* 438 B.R. 598, 609–10 (S.D.Ohio 2010). This is

a multifactor balancing test, not a rule in which every element must be satisfied; not all factors need to weigh in favor of permissive abstention in order for it to be appropriate. *MD Acquisition LLC v. Myers (In re Martin Designs, Inc.)*, 2009 WL 2707215, at *7 (Bankr.N.D.Ohio Aug. 26, 2009). Further, the relevance and importance of each of these factors will vary with the particular circumstances of each case and no one factor is necessarily determinative. *McDaniel*, 364 B.R. at 650, *citing In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 6 F.3d 1184, 1189 (7th Cir.1993).

The two related Johnston adversary proceedings differ from the typical no asset Chapter 7 responsible person adversary because Johnston is requesting the court to rule upon three different responsible person determinations—one for each of the three taxing authorities involved. Thus, one significant factor favoring this court not abstaining is the fact that Johnston will have to proceed to three different forums to contest the responsible person assessments, as opposed to having all those determinations made by this court. Nevertheless, for the following reasons, the court believes that abstention is still appropriate.

*Effect or Lack of Effect on the Efficient Administration of the Estate if the Court Abstains.* Johnston argues as to the first factor that abstention would result in a dramatic delay in his bankruptcy and his subsequent fresh start. The United States and Middletown point out, however, that there will be no effect on the administration of the estate if the court abstains and that only Johnston, and not the creditors, will suffer a delay if he is forced to litigate in another forum.

The Estate Case has no assets for distribution, and no assets will be made available for distribution should Johnston prevail on his complaint. Moreover, Johnston has received his discharge. The pendency of this adversary proceeding is, in fact, the only reason why the estate case has not been closed. Under these circumstances, the administration of this estate will not be affected if this court abstains. Accordingly, this factor weighs in favor of abstaining. *See Kohl*, 397 B.R. at 845–46.

*The Extent to which Bankruptcy Issues Predominate in this Proceeding.* Johnston asserts that the question of whether he is a "responsible party" for the trust fund taxes is controlled by federal statutes and no critical state law issues predominate over the bankruptcy issues. He also believes that "the difficulty or unsettled nature of the applicable ... law" is low because the "responsible person" test and the "willfulness" test are fairly standard and do not require a lengthy period for discovery and adjudication. In his view, each of these factors weighs in favor of exercising jurisdiction. Middletown posits that the determination of whether Johnston is responsible for city taxes is a matter of state law and that this factor favors abstention.

The only bankruptcy issues here are the dischargeability of the taxes and Johnston's fresh start. Because the trust fund taxes are clearly nondischargeable regardless of who is responsible for them, that issue is not paramount. Although Johnston's fresh start would be threatened if he is found to be a responsible person, that fact would be true regardless of which forum decides the issue. The dominant issue is whether Johnston is a responsible person under tax law for the trust fund taxes owed by the Companies. While the factors considered by the different taxing authorities in making the responsible person determination may be similar and overlap, the provisions controlling the determination for each authority

appear to differ in varying degrees. Thus, because there are no bankruptcy issues to resolve and the responsible person determinations involve application of non-bankruptcy law, including federal, state and municipal law, the court finds that this factor weighs in favor of abstaining

*Whether there are Related Proceedings Pending in State Court or in Any Other Non–Bankruptcy Forum and the Availability of Other Remedies.* The lack of pending proceedings in a non-bankruptcy forum is a factor favoring retention of this dispute. However, there is an alternative forum. If no alternative forum were available, the court would not abstain even if the other relevant factors indicated that permissive abstention was appropriate. *See Dayton Title Agency, Inc. v. Wright (In re Dayton Title Agency, Inc.),* 304 B.R. 323, 330–31 (Bankr.S.D.Ohio 2004). *See also Heartwood II, L.L.C. v. DeKalb County (In re Hospitality Ventures/Lavista),* 314 B.R. 843, 851 (Bankr.N.D.Ga.2004) (§ 1334(c)(1) does not permit preclusive abstention—abstention that is outcome determinative because relief is not available elsewhere).

Johnston's ability to appeal the tax assessments administratively is unclear from the record, but the United States outlined an alternative procedure for contesting the IRS assessments which is available to taxpayers who did not utilize the afforded administrative proceedings to challenge the assessments.[9] Johnston did not dispute the existence and availability of this alternative procedure. Johnston likewise has not asserted that he has no other

forum in which to challenge Middletown's assessments, only that he will incur additional expenses if forced to litigate in multiple forums. To the extent principles of comity would promote permissive abstention in favor of a state-court proceeding, those same principles would apply with equal force to a proceeding in another federal forum. *See Antioch Co. Litigation Trust v. Hardman,* 438 B.R. 598, 611 (S.D.Ohio 2010).

*The Jurisdictional Basis for the Proceeding and the Substance Rather than the Form of an Asserted Core Proceeding.* Johnston asserts that § 157(b), which defines core proceedings, and § 505(a), which provides for the determination of tax liabilities, represent jurisdictional bases for determining his liability for the trust fund taxes. The United States and Johnston agree that this core proceeding asserted involves the dischargeability of a debt. Johnston, views the dischargeability issue as the substance of his complaint, whereas the United States maintains that this type of debt is indisputably nondischargeable and Johnston seeks merely a determination that he does not owe it.

The court concludes that, even assuming it had jurisdiction, such jurisdiction is tenuous because the responsible person determination will not affect property of the estate, distributions to creditors or otherwise impact administration of Johnston's case. This conclusion supports abstention. *See Wolverine Radio,* 930 F.2d at 1142 (situations may arise where an extremely tenuous connection to the bankruptcy estate would not satisfy jurisdictional re-

---

**9.** Under this procedure, a taxpayer may contest his responsibility for trust fund taxes and penalties post assessment by paying the IRS the amount of tax associated with one employee for one quarter per employer ($100 per employer), ask for the payment to be applied to the trust fund portion of the liability, and then file a claim for refund. If and when this claim for refund is denied or if the IRS fails to act on the claim for six months, the taxpayer can file a refund suit for $100 in the district court. In defending the suit, the United States will counterclaim for the remaining assessments, and the district court will make a full determination of the taxpayer's liability.

quirement); *Kelley v. Nodine (In re Salem Mortg. Co.)*, 783 F.2d 626, 635 (6th Cir. 1986) ("The degree to which the related proceeding is related to the bankruptcy case, as a practical matter, will doubtless be an important factor in the decision whether to abstain."). The substance of this adversary proceeding is not in the nature of a dischargeability action and that substance must prevail over form.

*The Degree of Relatedness or Remoteness of the Proceeding to the Estate Case.* Johnston contends that the court should balance this factor in favor of exercising jurisdiction because the severance of the federal tax claims from the core bankruptcy matters, while feasible, would significantly increase his court costs and attorney fees, as well as delay his fresh start and the administration of his estate. Johnston asserts that the degree of relatedness of this proceeding to his Chapter 7 case is very close and that the defendants' rights would not be significantly affected should this court decide his liability for the trust fund taxes and related penalties. In the absence of any prejudice to the defendants, Johnston believes this court should exercise jurisdiction. The United States counters that this proceeding is not related in any meaningful way to Johnston's bankruptcy because no matter which way the substantive issue is decided, the estate will not be affected.

The court disagrees with Johnston that severing the federal tax issues from the core bankruptcy matters would be extremely complex. This is a no asset Chapter 7 case and Johnston has received his discharge. The only issue remaining is whether he will be liable for payment of the trust fund taxes and penalties. If so, the debts will be non-dischargeable as a matter of law. There will be nothing further to litigate.

*Whether the Parties Engaged in Forum Shopping.* The court finds no evidence that Johnston engaged in forum shopping by filing his complaint here. Because his bankruptcy was still pending, it was natural that he would choose this forum for hearing his disputes with various tax authorities. This factor weighs in favor of retaining this proceeding.

*Jury Trial Demand or Lack Thereof.* No party has requested a jury trial and this fact favors retention.

*The Presence in the Proceeding of Non-Debtor Parties.* The presence of the United States and Middletown in this adversary proceeding is not a significant factor. Since this estate is not providing any distribution to creditors, the defendant's participation in this bankruptcy is limited to this adversary proceeding and, as noted, the issues bringing these defendants to this court can be resolved in an alternative forum.

*Unusual or Other Significant Factors.* Several independent factors are particularly significant to determining whether the court should abstain, including adjudication of the responsible person determinations in multiple venues; and deference to the tribunals and processes which ordinarily are involved in making such determinations. Johnston notes that if this court does not make the responsible person determinations, then he is going to have to pursue those determinations in three separate venues. That reality might bode in favor of retaining the matter and making the determinations with respect to each of the taxing authorities. However, since each of the taxing authorities has its own procedures, considerations and precedent related to those determinations, principles of comity favor abstaining.

Another large concern is the Complaint asserts that the Companies' accountant and treasurer, Patrick Thayer ("Thayer"),

is the responsible person (Complaint, ¶¶ 6 & 10). This court does not have jurisdiction over Thayer to reach a determination that Thayer, rather than Johnston, is the responsible person for the Companies. However, assuming the evidence introduced by Johnston at any trial of this adversary proceeding would be consistent with the Complaint, Johnston will effectively be requesting this court to make such a determination. Given the lack of jurisdiction over Thayer and that Thayer does not have an obligation to defend these allegations made against him in this forum, the court finds that it is more reasonable for these assertions to be considered by a court or agency which can consider the facts as alleged by both Johnston and Thayer.

*Conclusion as to § 1334(c) Abstention.* In conclusion, while some of the *Tremaine* factors favor keeping the tax dispute in this court, the weight of the factors support abstention. Not all the factors need to weigh in favor of permissive abstention in order for it to be appropriate. *Martin Designs, Inc.*, 2009 WL 2707215, at *7. Further, the relevance and importance of each of these factors will vary with the particular circumstances of each case and no one factor is necessarily determinative. *McDaniel*, 364 B.R. at 650. In this instance, the court concludes that abstention under § 1334(c)(1) is appropriate because the determination of whether Johnston is a "responsible person" will have no effect on his bankruptcy estate; the tax law issues predominate over the bankruptcy issues; and there are alternative forums available which can more appropriately decide this question. These factors constitute the type of exceptional circumstances justifying abstention. Accordingly, the court, in the interest of justice and under principles of comity, abstains from hearing this adversary proceeding pursuant to § 1334(c)(1).

### 2. *Abstention Under § 505(a)*

 Because the language of § 505(a)(1) is discretionary, bankruptcy courts have also developed factors to consider in deciding whether to determine tax liability that are similar to those used for § 1334(c)(1). *See In re Beisel*, 195 B.R. at 378–79; and *Donoff*, 1999 Bankr.LEXIS 144. The six factors are:(1) the complexity of the tax issues to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time for trial and decision; (5) the asset and liability structure of the debtor: and (6) the prejudice to the debtor and the potential prejudice to the taxing authorities. *Beisel*, 195 B.R. at 379. Having considered these factors, the court declines to exercise its power to determine Johnston's tax liability under § 505(a)(1) as a "responsible person."

Johnston and the United States agree that the complexity of the tax issues should not be of concern and that this court is fully capable of determining whether the debtor is a responsible person. However, these tests involve the application of substantive nonbankruptcy law and something more than an exercise in accounting. *See Gossman v. United States (In re Gossman)*, 206 B.R. 264, 267 (Bankr.N.D.Ga.1997). Accordingly, the court concludes that, all other factors being equal, these issues are more appropriately addressed in the non-bankruptcy forums if such forums are available, which appears to be the case. *See Id.*

Johnston argues that forcing him to move to other forums would, due to increased litigation costs, lower the potential amounts payable to the United States and Middletown if he is found liable for the trust fund taxes. However, these issues

have no effect upon the estate and, if anything, delay the estate's closing.

The impact on the court's docket is not a significant concern. Even if the time for trial and decision would take longer here than in forums more accustomed to deciding tax matters, the court finds that factor inconsequential.

Johnston contends that pending resolution of his tax issues, assets and liabilities remain unclear and restrict his ability to "move forward." But again, the only question is whether Johnston will be responsible for payment of various trust fund taxes. If he is determined to be a responsible person, those debts will be nondischargeable. Thus, no apparent reason exists as to why this factor favors not abstaining.

Johnston submits that neither he nor the taxing authorities will be prejudiced if the controversy remains in this court. The United States maintains that no party would be prejudiced if the court abstains. The court recognizes that Johnston will be prejudiced by not having the determination of his tax liability in a single forum of his choosing if the court abstains. This prejudice includes potentially greater litigation costs. The court, however, finds that this prejudice does not outweigh the fact that the substantive tax law question presented here is more appropriately addressed in non-bankruptcy forums. *See Beisel,* 195 B.R. at 380.

The court's decision to abstain under § 505(a) is also informed by the recognized purposes of this statute. These include providing a forum for the speedy determination of the legality or amount of tax claims, which if left to other proceedings, would delay the administration of the bankruptcy estate and an opportunity for the trustee, on behalf of creditors, to contest the legality and amount of a tax claim when the debtor is unable or unwilling to

do so and a dissipation of estate assets might otherwise occur. *See Id.* at 379–80; *Kohl,* 397 B.R. at 845. Neither of these objectives would be served by maintaining this adversary proceeding because there are no assets to administer or which might be dissipated. *See Gossman,* 206 B.R. at 267. The weight of authority shows that abstention is generally appropriate in no-asset chapter 7 cases as no bankruptcy purpose would be served. *See Rowland v. United States (In re Rowland),* 426 B.R. 874, 875–76 (Bankr.D.N.M.2010) (collecting cases). This rationale has been applied to cases in which the debtors are seeking determinations that they are not "responsible persons" for purposes of liability for unpaid trust fund taxes. *See Kohl,* 397 B.R. at 846; *In re Queen,* 148 B.R. 256 (S.D.W.Va.1992); *In re Ontiveros,* 271 B.R. 646 (Bankr.N.D.Cal.2001); *Rowland,* 426 B.R. at 877; *United States v. Paolo,* 2009 WL 2208094, at *4–5 (D.R.I. July 23, 2009); *Gossman,* 206 B.R. at 267; *Lyle v. United States (In re Lyle),* 193 B.R. 750, 751–52 (Bankr.E.D.N.C.1995). *But see Cook v. Internal Revenue Serv. (In re Cook),* 230 B.R. 475, 477 (Bankr.D.Conn. 1999) (declining to abstain under § 1334(c)(1) in context of dischargeability action) and *Anderson,* 171 B.R. 549 at 554 (fact that there were no assets in debtor's estate was not a determining factor as to whether to abstain under § 505 because debtor's interest in finding out if he owed the tax must also be considered for purposes of his fresh start).

**C. Johnston Lacks Standing to Avoid the IRS' Setoff as a Preference Under § 547 or as an Unauthorized Post–Petition Transfer Under § 549 and, Therefore, Count III Will Be Dismissed**

The only instance under which Chapter 7 debtors may exercise a trustee's

avoidance powers is under § 522(h) which generally provides that a debtor can use the trustee's avoidance powers under §§ 544, 545, 547, 548, 549, or 724(a) to avoid a transfer of property or to recover a setoff to the extent that the debtor could have exempted such property under § 522(g)(1). *See* 11 U.S.C. § 522(h) and *Humphrey v. Herridge (In re Humphrey)*, 165 B.R. 578 (Bankr.D.Md.1993) (setting forth a five factor test to determine whether a Chapter 7 debtor could use the trustee's avoidance power under § 547 to recover property asserted to be exempt). Johnston has not claimed an exemption in the funds set off by the IRS nor does his complaint allege that he could have exempted those funds. *See* est. doc. 1, Schedule C (Property Claimed as Exempt) and the Complaint. Instead, the Complaint requests an order to "reallocate the seized $12,168.00 to the bankruptcy estate and thus distribute among other secured creditors." doc. 1, p. 7. Accordingly, Johnston may not use § 547 to avoid the setoff.

Further, § 547 expressly grants the authority to avoid a preference only to the trustee and not to the debtor.[10] *See Danley v. United States*, 180 B.R. 291 (Bankr. W.D.Okla.1995) (§ 547 is statutory remedy available only to a trustee and a Chapter 7 debtor had no cause of action to avoid a transfer made by IRS); and *First Am. Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167 (Bankr.W.D.Mo.1999), *aff'd* 242 F.3d 375 (8th Cir.2001) (only the trustee had standing to seek avoidance of constructive trust imposed by bankruptcy court). Pursuant to § 704(a)(1), the trustee has the authority to collect and reduce to money property of the estate. The trustee has

filed a no asset report indicating that he does not intend to pursue the setoff for the benefit of the bankruptcy estate.

Under these circumstances, Johnston does not have standing to avoid the IRS postpetition setoff either under § 547 or § 549 and Count III therefore must be dismissed.

## IV. Conclusion

The court concludes that it does not have subject matter jurisdiction. Assuming it did have jurisdiction, it would abstain from determining whether Johnston is responsible for the employment taxes assessed by the United States and Middletown. While the court is sympathetic to Johnston having to adjudicate the responsible person determination in three separate venues on the heels of a bankruptcy, those considerations are an insufficient basis for this court to reach those determinations. Accordingly, Counts I and II of the Complaint are dismissed for lack of jurisdiction. Count III of the Complaint is dismissed for lack of standing because Johnston may not exercise the avoiding powers of a trustee under §§ 547 and 549.

The court will enter a separate order consistent with this decision.

**IT IS SO ORDERED.**

---

**10.** While Johnston has cited § 547 and asserts that the setoff was a preference, he asserts that the setoff was conducted post-petition, raising a question as to whether the correct avoidance provision would be § 549, which allows unauthorized post-petition transfers to be avoided. Regardless, the analysis and conclusion is the same—Johnston has not asserted an exemption in the funds setoff and, therefore, he does not have standing to use one of the trustee's avoidance powers to recover the funds set off by the IRS.