IN RE: SARFANI, INC., Debtor.

Sarfani, Inc., Plaintiff,

v.

Mississippi Department of
Revenue, Defendant.

Case No.: 14–13526–JDW
A.P. No.: 14–01075–JDW

United States Bankruptcy Court,
N.D. Mississippi.

Filed January 27, 2015

James G. McGee Jr, Law Office of James G. McGee Jr., PLLC, Jackson, MS, for Debtor.

John S. Stringer, Mississippi Department of Revenue, Jackson, MS, for Defendant.

*ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANTS
MOTION TO DISMISS OR TO AB-
STAIN (A.P. DKT. # 4)*

Jason D. Woodard, United States
Bankruptcy Judge

This adversary proceeding is before the Court on the Motion to Dismiss or to Abstain (the "Motion") filed by defendant Mississippi Department of Revenue ("MDOR")(A.P. Dkt.# 4)[1] and MDOR's Memorandum Brief in Support of the Motion (A.P.Dkt.# 5). The debtor-plaintiff Sarfani, Inc. ("Sarfani") filed a Response in Opposition to Defendant's Motion (A.P. Dkt.# 8) and an accompanying Memorandum in Opposition to the Motion (A.P.Dkt.# 9), to which MDOR filed a reply (A.P. Dkt.# 11). The Motion was set for hearing on December 19, 2014, but was removed from the calendar after the parties advised the Court that no further oral argument was necessary and requested that the Court take the matter under advisement based on the pleadings (A.P. Dkt. # 13).[2] Having considered the pleadings, the Court finds that the Motion is due to be granted in part and denied in part.

As discussed below, the Court finds that it has jurisdiction of the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 151 and 1334(b) and United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 6, 1984. In addition, as discussed below, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and 11 U.S.C. § 505(a) confers jurisdiction to determine the tax dispute at issue.

## I. BACKGROUND [3]

Sarfani owned and operated a convenience store in Senatobia, Mississippi. MDOR conducted an audit of Sarfani's finances and, as a result, issued two sales tax assessments against Sarfani totaling $238,902.00 for the periods of October 1, 2003, through December 31, 2006, and January 1, 2007, through September 30, 2007 (the "Sales Tax Assessments"). In addition, MDOR assessed corporate income taxes against Sarfani for these periods totaling $76,298.00, and withholding taxes in the amount of $24,964.00.[4]

Sarfani filed its chapter 7 voluntary petition on September 19, 2014 (Bankr. Dkt. # 1). Sarfani's sworn Schedule B provides that, at the time it filed the bankruptcy petition, its only asset was a First Tennessee Checking Account in the amount of $6,298.98. Sarfani's sworn Schedule E provides for a non-contingent, unliquidated, undisputed, unsecured priority claim owed to MDOR in the amount of $72,896.05 (Bankr. Dkt.# 1). No other assets or liabilities were scheduled, and none of the schedules were amended during the course of this bankruptcy case. After conducting the § 341 meeting of creditors and investigating Sarfani's assets, the chapter

---

1. Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. # ____," and citations to this adversary proceeding will be to "A.P. Dkt. # ____."

2. Counsel for the respective parties briefed and orally argued substantially the same issues in prior cases.

3. The facts in this case are either undisputed or noted herein as allegations. In considering a Motion to Dismiss, the Court must take the plaintiffs allegations as true. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4. Count I of the Complaint challenges only the Sales Tax Assessments, and not the assessments for corporate income taxes or withholding taxes.

7 trustee in this case filed a Chapter 7 Trustee's Report of No Distribution (the "TRND"), on November 5, 2014, in which the trustee reported that Sarfani's estate had been fully administered and that there was no property available for distribution to Sarfani's creditors. Objections to the TRND were due by December 5, 2014, but none were filed.

On September 23, 2014, Sarfani filed this adversary proceeding against MDOR (A.P. Dkt.# 1). Count I of the Complaint challenges the validity of the Sales Tax Assessments, Count II seeks a declaration that the assessments are dischargeable in Sarfani's bankruptcy case, and Count III seeks a determination that the Complaint initiates an "adversarial proceeding."

In its Complaint, Sarfani claims that the amount of the Sales Tax Assessments do not accurately reflect the actual amount of sales taxes owed by Sarfani and that the Sales Tax Assessments are the result of "an audit conducted in a dishonest, self-serving, careless, and inappropriate manner." (Complaint, A.P. Dkt.# 1, ¶ 14). Specifically, Sarfani asserts that the Sales Tax Assessments were calculated by MDOR auditors using alternative accounting methods that are not permitted when adequate records exist on which to base sales tax assessments. Sarfani asserts that adequate records do exist in this instance which would permit a more accurate calculation of Sarfani's sales tax liability. Sarfani further alleges that it attempted to appeal the assessments with the assistance of an accountant, but that the accountant, without notice to or authority from Sarfani, unilaterally cancelled the hearing, which was scheduled for September 25, 2008. Sarfani admits that it failed to

prosecute its appeal of the assessments, but argues that such failure should be excused because it was due to the unauthorized actions of its accountant.

MDOR timely filed the Motion on October 23, 2014, alleging several bases for dismissal: that the complaint fails to state a claim on which relief can be granted as to the dischargeability count, that the Court lacks subject-matter jurisdiction to determine the validity or amount of the tax liability and that the doctrine of sovereign immunity requires dismissal. Alternatively, MDOR argues that, even if the Court determines that it has jurisdiction, the Court should abstain from hearing this adversary proceeding, because the relief sought is of no benefit to the bankruptcy estate. The Court will consider each of these arguments in turn.

## II. *ANALYSIS*[5]

### A. Counts II and III

██ Counts II and III of the Complaint are due to be dismissed. Count II of the Complaint, which seeks a determination of dischargeability as to the assessments, seeks relief that the Court cannot grant. Sarfani is not an individual and is therefore not entitled to a discharge under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 727(a)(1); *See Kelley v. Cypress Financial Trading Co., L.P.,* 518 B.R. 373, 378 (N.D.Tex.2014).

██ Similarly, Count III of the Complaint, which simply avers that the Complaint is the initial pleading by which an adversarial proceeding is commenced, is also due to be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Pro-

---

**5.** All statutory references are to Title 11, United States Code (the "Bankruptcy Code"), un-

less otherwise noted.

cedure.[6] It is true that the filing of a complaint in bankruptcy court commences an adversary proceeding in the same way that the filing of a complaint in district court commences a civil action. FED. R. CIV. P. 3; FED. R. BANKR. P. 7003. Count III is simply of no consequence, because Sarfani is not seeking any relief therein. Accordingly, Count III is also due to be dismissed.

## B. Count I—Validity and Amount of Sales Tax Assessments

The remaining count, Count I, is the heart of the dispute between the parties. In Count I, Sarfani challenges the validity and amount of the Sales Tax Assessments.

### 1. Subject–Matter Jurisdiction

MDOR asserts that the Court lacks subject-matter jurisdiction to hear the tax dispute at issue, and thus dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is warranted. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998) (citation omitted). The Court has jurisdiction to consider whether it has subject-matter jurisdiction over a controversy. *See Henry v. United States,* 277 Fed.Appx. 429, 434 (5th Cir.2008)(citing *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 376, 60 S.Ct. 317, 84 L.Ed. 329 (1940)). The burden of proof is on the party asserting the existence of subject-matter jurisdiction. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). The Court concludes that it does have jurisdiction to adjudicate the tax dispute presented in Count I.

Section 505 of the Bankruptcy Code provides an extraordinary opportunity to debtors that is beyond the relief available outside of bankruptcy. Section 505(a) provides:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a)(1). Section 505(a)(2) contains only two exceptions where a bankruptcy court may not determine tax liability, neither of which apply here. The first exception, incorporating *res judicata* principles, provides that courts may not determine tax liability if such liability had previously been contested and adjudicated by "a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(2)(A). The exception only applies to actual adjudications, and not the initial assessment by MDOR. If a debtor simply let the deadline to appeal pass and did not seek or obtain an adjudication, this exception will not usually apply. The language of § 505(a)(2)(A) reflects a congressional intent "to defer to the tax adjudication mechanism of a given state, whatever it might be, so long as it results in *an* adjudication." *El Tropicano, Inc. v. Garza (In re El Tropicano, Inc.),* 128 B.R. 153, 160 (Bankr.W.D.Tex.1991)(emphasis in original). In this case, it is undisputed that there has been no adjudication by a court or an administrative tribunal, so the first exception does not apply.

The second exception is that a court may not determine the estate's right to a tax

---

**6.** Rule 12(b)-(i) of the Federal Rules of Civil Procedure is made applicable in bankruptcy adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.

refund prior to the earlier of either 120 days after such refund is requested from the governmental unit by the trustee or such governmental unit's determination of the refund request. 11 U.S.C. § 505(a)(2)(B). Tax refunds are not at issue in this case. Accordingly, neither exception applies here.

■ Apart from these narrow exceptions, the United States Court of Appeals for the Fifth Circuit has recognized that bankruptcy courts have been given "a broad grant of jurisdiction in § 505(a)(1)," which gives them the ability to determine the amount and legality of taxes. *Internal Revenue Serv. v. Luongo (In re Luongo)*, 259 F.3d 323, 328 (5th Cir.2001). Indeed, "absent the express statutory limitations in § 505(a)(2)(A) and (B), bankruptcy courts have universally recognized their jurisdiction to consider tax issues brought by the debtor, limited only by their discretion to abstain." *Id.* at 329. Since neither exception applies in this case, the Court has jurisdiction to determine the tax liability at issue pursuant to § 505 and *Luongo*.

### 2. Statutory & Constitutional Authority

■ Likewise, the Court has both the statutory and constitutional authority to consider and enter a final judgment in this adversary proceeding. *See Fire Eagle, LLC v. Bischoff (In re Spillman Dev. Group, Ltd.)*, 710 F.3d 299 (5th Cir.2013). Although the determination of the appropriate amount of the Sales Tax Assessments is a state-law issue, Sarfani's right to obtain an adjudication of the amount of the Sales Tax Assessments at this time is an opportunity created by the Bankruptcy Code. 11 U.S.C. 505(a). "If [a] proceed-

ing involves a right created by the federal bankruptcy law, it is a core proceeding." *Fire Eagle*, 710 F.3d at 305 (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)). Accordingly, the adjudication of MDOR's claim against the Debtor is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and the Fifth Circuit's holding in *Fire Eagle*, 710 F.3d 299.

Further, *Stern v. Marshall* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and its progeny do not prohibit entry of final judgment by this Court in this adversary proceeding. In *Stern*, the United States Supreme Court held that it was unconstitutional for a bankruptcy court to issue a judgment on a creditor's state-law counterclaim, even though that counterclaim was statutorily "core" pursuant to 28 U.S.C. § 157(b)(2)(C). The Supreme Court's decision was based on the fact that the counterclaim did not rely or depend on the bankruptcy case. *Stern*, 131 S.Ct. at 2611. The Fifth Circuit considered the applicability of *Stern* in *Fire Eagle*, holding that because the *Fire Eagle* creditor's claim was "inextricably intertwined with the interpretation of a right created by federal bankruptcy law," *Stern* was inapplicable. *Fire Eagle*, 710 F.3d at 306. In this case, the ability of Sarfani to seek an adjudication of the amount of MDOR's claim against the bankruptcy estate is not just "inextricably intertwined" with the Bankruptcy Code, it is solely based on the Bankruptcy Code. 11 U.S.C. § 505(a). Accordingly, MDOR's claim is not a "*Stern* claim."

### 3. Sovereign Immunity [7]

■ MDOR asserts that dismissal of this adversary proceeding is required

---

**7.** This is a matter of first impression in this Court. In another case before the Court, *Conoway v. MDOR*, A.P. No. 14–01002–JDW, MDOR attempted to raise the issue of sover-

eign immunity for the first time at the hearing on its Motion to Dismiss. The Court declined to address it at the hearing, because the debtor-plaintiff had not had an opportunity to

because MDOR, as a state agency, has sovereign immunity under the Eleventh Amendment of the United States Constitution, insulating it from this suit. The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. In applying the Eleventh Amendment, the Supreme Court has "repeatedly held that an unconsenting State also is immune from suits by its own citizens." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004)(collecting cases). Further, "[b]ecause of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

MDOR concedes that Congress expressed its intent to abrogate states' sovereign immunity with regard to proceedings under § 505(a) through the passage of § 106(a)(1), which provides that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to ... [section] 505." 11 U.S.C. § 106(a)(1). MDOR argues, however, that this abrogation was ineffective and that the Fifth Circuit Court of Appeals' decision in *Department of Transportation and Dev. V. Turner (In re Estate of Fernandez)*, 123 F.3d 241 (5th Cir.1997) controls.

The court in *Fernandez* held that § 106(a) is unconstitutional because, although Congress unequivocally expressed its intent to abrogate sovereign immunity in that statute, Congress did not do so pursuant to a valid exercise of its power. *Fernandez*, 123 F.3d at 246. The Fifth Circuit held that Congress did not have the power, pursuant to its bankruptcy power under Article I of the United States Constitution,[8] to abrogate state sovereign immunity by enacting § 106(a), because Congress' Article I powers could not be used to circumvent the Eleventh Amendment's restrictions on federal judicial pow-

respond or prepare for argument on that issue, but invited MDOR to raise the issue of sovereign immunity through the filing of an additional motion. Following the hearing on issues pleaded, briefed, and argued in the *Conoway* case, the Court entered an order denying the Motion to Dismiss. Rather than raising the sovereign immunity issue with this Court through an additional pleading in *Conoway* MDOR instead is attempting to appeal the Court's denial of its Motion to Dismiss, arguing that the Court should have considered the issue of MDOR's sovereign immunity *sua sponte*. MDOR filed a motion for an interlocutory appeal of the order denying its Motion to Dismiss in the *Conoway* case, which remains pending before the Honorable Michael P. Mills in the United States District Court for the Northern District of Mississippi. The parties in *Conoway* also certified the matter for direct appeal to the Fifth Circuit Court of Appeals, effectively seeking a determination on sovereign immunity in the first instance from the Fifth Circuit. The Fifth Circuit denied the petition for direct appeal. As the Fifth Circuit declined to hear the direct appeal, and the District Court has not yet ruled on whether it will permit the interlocutory appeal to proceed, MDOR's claim of sovereign immunity remains an open issue that is explicitly before the Court for consideration for the first time in this adversary proceeding.

8. Clause 4, Section 8, Article I of the United States Constitution (the "Bankruptcy Clause") provides, in relevant part: "The Congress shall have Power ... [t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. art. 1, § 8, cl. 4.

er. *Id.* at 243. In so holding, the Fifth Circuit relied heavily on the United States Supreme Court's ruling in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), in which the Supreme Court held that Congress could not abrogate states' sovereign immunity pursuant to the Indian and Interstate Commerce Clauses of Article I of the U.S. Constitution. The *Fernandez* court pointed to a footnote in *Seminole Tribe,* which provided that "it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity," for the proposition that there was "no principled reason to distinguish in a relevant way Congress' Commerce Clause power that it purported to exercise in *Seminole Tribe* from its power under the Bankruptcy Clause for the purposes of state sovereign immunity." *Fernandez,* 123 F.3d at 244 (citing *Seminole Tribe,* 517 U.S. at 72 n. 16, 116 S.Ct. 1114).

MDOR argues that the subsequent opinions of the United States Supreme Court in *Hood* and *Central Virginia Community College v. Katz,* 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) do not specifically overrule *Fernandez* on this point. Even if that is technically correct, the United States Supreme Court has held that § 106(a) is not the only basis of the States' waiver of sovereign immunity with respect to bankruptcy laws and proceedings.

In *Hood,* the debtor filed an adversary proceeding in her chapter 7 bankruptcy case against a state agency, seeking to discharge her student loans as an undue hardship under § 523(a)(8). The Supreme Court rejected the agency's contention that the Eleventh Amendment barred the bankruptcy court from determining the dischargeability of the loans, holding that the exercise of the bankruptcy court's *in rem* jurisdiction to discharge a debt does not implicate the Eleventh Amendment. *Hood,* 541 U.S. at 447, 124 S.Ct. 1905. Shortly after the *Hood* case, the Supreme Court held more broadly that proceedings ancillary to *in rem* actions likewise do not implicate a state's sovereign immunity. *Katz,* 546 U.S. at 363, 126 S.Ct. 990; *See also McCoy v. Mississippi State Tax Commission (In re McCoy),* 2009 WL 2835258 at *4 (Bankr.S.D.Miss.2009). In *Katz,* a chapter 11 trustee brought an adversary proceeding to avoid alleged preferential transfers made by the debtor to various state institutions of higher learning. In holding that the Eleventh Amendment did not bar the suit, the Supreme Court acknowledged that its statements in the *Seminole Tribe* opinion "reflected an assumption that the holding in that case would apply to the Bankruptcy Clause," but declined to follow its *dicta* in the case with regard to the Bankruptcy Clause, because "[c]areful study and reflection" convinced the majority in *Katz* "that that assumption was erroneous." *Katz,* 546 U.S. at 363, 126 S.Ct. 990. The Supreme Court held that because bankruptcy jurisdiction is principally *in rem* jurisdiction, it is "premised on the debtor and his estate, and not on the creditors." *Id.* at 370, 126 S.Ct. 990 (citing *Hood,* 541 U.S. at 447, 124 S.Ct. 1905). Further, the exercise of bankruptcy jurisdiction "does not, in the usual case, interfere with state sovereignty even when States' interests are affected." *Id.* at 370, 126 S.Ct. 990 (citing *Hood,* 541 U.S. at 448, 124 S.Ct. 1905).

The Supreme Court reviewed the history of the ratification of the U.S. Constitution and came to the conclusion that the States agreed in the plan of the Constitutional Convention "not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Katz,* 546 U.S. at 377, 126 S.Ct. 990 (citing

*Blatchford v. Native Village of Noatakand Circle Village,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)(observing that a State is "not subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention' ")). Accordingly, the Supreme Court held that "in ratifying the Bankruptcy Clause, the states acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts," *Katz,* 546 U.S. at 378, 126 S.Ct. 990, even though some exercise of a bankruptcy court's power "unquestionably" involves more than "mere adjudication of rights in a res." *Id.* If sovereign immunity is waived to the extent that a debtor's estate is permitted to seek an affirmative monetary recovery from a state, as in *Katz,* then surely sovereign immunity is waived in a case such as this one where the debtor is seeking only a determination of the amount of its debt owed to MDOR.

Since *Fernandez,* the Fifth Circuit has acknowledged that the Supreme Court's decision in *Katz* "declared that states waived their sovereign immunity in bankruptcy "in the usual case" under the plan of the Constitutional Convention." *Zayler v. Department of Agriculture (In re Supreme Beef Processors, Inc.),* 468 F.3d 248, 253 n. 6 (5th Cir.2006)(citing *Katz,* 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945). Determining the amount of a creditor's claim against a debtor's estate is very much a "usual case" in bankruptcy.

The Fifth Circuit again considered the *Katz* and *Hood* rulings in *State of Texas v. Soileau (In re Soileau),* 488 F.3d 302 (5th Cir.2007). In *Soileau,* the state filed a motion to dismiss the debtor's bankruptcy case on the grounds that Eleventh Amendment sovereign immunity barred the discharge of forfeiture judgments in favor of the state against the debtor. The Fifth Circuit held that determining the debtor's right to a discharge under the Bankruptcy Code was asking the court to simply "exercise its *in rem* jurisdiction over her bankruptcy estate by adjudicating the rights of the State as a creditor." *Soileau,* 488 F.3d at 308. Sarfani, like Soileau, is asking this Court to adjudicate the rights of MDOR as a creditor. The Fifth Circuit held that such an exercise of *in rem* jurisdiction is "indisputably contemplated by *Katz,*" and, as such, the State's sovereign immunity claim failed. *Id.* Sarfani may ultimately fail to win its suit, but sovereign immunity does not bar it in the first instance.

### 4. Abstention

The Court having determined that it has subject-matter jurisdiction over Count I of Sarfani's Complaint and that sovereign immunity is not a bar, the Court now considers whether abstention is appropriate under the facts of this particular adversary proceeding. MDOR argues that abstention is appropriate, because adjudication of Sarfani's tax liability "would serve no legitimate bankruptcy purpose and would likewise be contrary to the policy underlying 11 U.S.C. § 505(a)(1)." (Motion, A.P. Dkt. # 4, ¶ 6). Essentially, MDOR asserts that, because this case is a no-asset chapter 7 bankruptcy case, the only potential beneficiary of a determination of Sarfani's tax liability is Sarfani itself. For support, MDOR relies on *Cain v. United States (In re Cain),* 142 B.R. 785 (Bankr.W.D.Tex. 1992) as well as several other cases from outside the Fifth Circuit.

 Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court has "broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.' " *Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195, 1206 (5th Cir.

1996). In addition, § 505(a)(1) provides an additional basis for permissive abstention, because it provides that a court may, but is not required to, determine a debtor's tax liabilities. *Luongo*, 259 F.3d at 330 (citing *In re Beisel*, 195 B.R. 378, 379 (Bankr. S.D.Ohio 1996)). In deciding whether to abstain from determining a tax claim under § 505(a), the Fifth Circuit in *Luongo* noted that other courts have identified a two-fold purpose of § 505:

> (1) affording a forum for the ready determination of the legality or of tax claims, which determination, if left to other proceedings, might delay conclusion of the administration of the bankruptcy estate, and

> (2) providing an opportunity for the trustee, on behalf of the creditor, to contest the validity and amount of a tax claim when the debtor has been unwilling or unable to do so.

*Luongo*, 259 F.3d at 330 (internal quotations and citations omitted). However, the Fifth Circuit explicitly opined that courts that conclude that abstention is warranted when neither of these two purposes are served improperly view § 505(a) in isolation, without proper deference to the other goals of the Bankruptcy Code, such as the honest debtor's "fresh start." *Luongo*, 259 F.3d at 330. Accordingly, the Court must consider the impact of abstention "not only on the general administration of the estate, but also on the debtor." *Id.* (citing *In re Smith*, 122 B.R. 130, 133–34 (Bankr.M.D.Fla.1990)).

■ In this case, because it is too late for Sarfani to challenge the assessments under state law, Sarfani has no forum in which to challenge the assessments if this Court abstains. The Court's abstention in this matter would therefore not delay the administration or conclusion of the bankruptcy case while waiting on other proceedings, as no other proceedings could be commenced in state court or otherwise. Likewise, the Court's retention of this adversary proceeding would not provide any benefit to Sarfani's estate or to MDOR, its sole creditor. Since this is a no-asset chapter 7 case, unsecured creditors would gain nothing from the decrease of any liability owed to MDOR, because unsecured creditors will not receive a distribution in any event. Any decrease or elimination of the Sales Tax Assessments will result only in a decrease of Sarfani's liability on this particular claim, which certainly would not benefit MDOR (its only scheduled creditor).

■ In addition, Sarfani is a corporate debtor, and as discussed above, it is not entitled to a discharge and will not receive a fresh start. 11 U.S.C. § 727(a)(1). The goal of a chapter 7 case is "the orderly liquidation of the debtor, not its reorganization." *Monaco v. U.S. Dept. of Educ. (In re County Schools, Inc.)*, 163 B.R. 424, 430 (Bankr.D.Conn.1994). In this adversary proceeding, Sarfani is seeking to prove that it owes significantly less to MDOR than MDOR is claiming. Even if the Court ultimately agrees with Sarfani, there is no benefit to Sarfani from such a determination—Sarfani is defunct and has no assets available to satisfy MDOR's claim, no matter the amount of that claim. Therefore, the Court's retention of this adversary proceeding would not benefit the debtor, the creditors, or the bankruptcy estate, so there is no proper purpose for retention as contemplated by *Luongo*, 259 F.3d at 330.[9] Unlike the chapter 7 case of an individual debtor, this corporate debtor

---

**9.** To the extent that the Court's determination of the validity of the Sales Tax Assessments might benefit a third party with derivative liability, such consideration is of no moment, as there is no third party currently before the Court.

will receive no discharge or fresh start, and will not be in existence moving forward. Accordingly, none of the purposes of § 505(a) would be served by the Court's retention of this adversary proceeding.

■ In further consideration of whether to abstain from determining a tax claim under § 505(a), the Fifth Circuit in *Luongo* noted that courts have generally considered six factors:

(1) the complexity of the tax issues to be decided;

(2) the need to administer the bankruptcy case in an orderly and efficient manner;

(3) the burden on the bankruptcy court's docket;

(4) the length of time required for trial and decision;

(5) the asset and liability structure of the debtor; and

(6) the prejudice to the taxing authority.

*Luongo,* 259 F.3d at 330 (citing *In re Hunt,* 95 B.R. 442, 445 (Bankr.N.D.Tex. 1989)); *Fugitt v. MDOR (In re Fugitt),* 2014 WL 3888281, at *13 (Bankr.S.D.Miss. 2014). These factors also weigh in favor of abstention in this adversary proceeding.

This Court often considers and decides issues of state law in resolving disputes in bankruptcy cases. In fact, most creditor claims are based in state law. *Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136· (1979). Although this adversary proceeding is in the beginning stages, it does not appear to the Court that the determination of sales tax assessments is an especially complex area of state law; however, the Court recognizes that the issue before the Court is one solely of state law. Accordingly, in this case, this factor weighs neither in favor of nor against abstention.

Next, given that this case serves no bankruptcy purpose, the Court finds that its consideration of this adversary proceeding would be both overly burdensome and time-consuming. For the reasons set forth above, it is not an economical use of the Court's limited time and resources, since neither the Debtor nor its creditors would benefit from the Court's retention of this matter. Accordingly, this factor weighs heavily in favor of abstention.

Similarly, neither the need to efficiently administer the bankruptcy case, nor Sarfani's asset and liability structure, are implicated by this Court's decision to abstain (or not) in this proceeding, as there will be no administration of the estate and Sarfani has no assets from which its liabilities may be satisfied.

Finally, MDOR did not allege any prejudice it will suffer because of this Court's consideration of this case, and the Court will not presume any such prejudice. This sole factor weighs against abstention.

For the reasons set forth above, the Court finds and concludes that no purpose of the Bankruptcy Code would be furthered by the Court's retention of this adversary proceeding. After applying the factors set forth in *Luongo,* the Court further finds and concludes that abstention is appropriate under these facts.

### III. *CONCLUSION*

Although the Court has jurisdiction and MDOR does not enjoy sovereign immunity in this adversary proceeding, abstention is appropriate as to Count I. For the reasons set forth above, it is hereby

**ORDERED, ADJUDGED, AND DECREED** that

1. The Motion is **GRANTED in part and DENIED in part.**

2. Counts II and III of the Complaint are **DISMISSED, with prejudice.**

3. The Court **ABSTAINS** from consideration of Count I of the Complaint.

**SO ORDERED.**